IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT FERGUSON, | § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. _____ |
| SERVICENOW, INC., | § § | |
| Defendant. | § § § | |

# PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COMES NOW, Robert Ferguson ("Ferguson" or "Plaintiff") and files this Original Complaint against ServiceNow, Inc. ("ServiceNow" or "Defendant") and would respectfully show the Court the following:

## I.
## THE PARTIES

1. Plaintiff Robert Ferguson is an individual who resides in Collin County, Texas. His date of birth was September 29, 1964.

2. Defendant ServiceNow, Inc. is a foreign corporation doing business in the State of Texas including in Dallas County.

## II.
## JURISDICTION

3. The court has jurisdiction pursuant to 42 U.S.C. § 2000, *et. seq.* because federal causes of action are plead under the Age Discrimination in Employment Act of 1967. 29 U.S.C. § 621, *et seq.* (hereinafter "ADEA") and because there is diversity of citizenship between the parties and the amount in controversy is in excess of **$75,000.00**.

## III.
## VENUE

4. Venue of this action is governed by 28 U.S.C. § 1391 and is proper in the Northern District of Texas and in this Division because Plaintiff was employed by Defendant in this District and this Division and the incidents giving rise to this lawsuit occurred in this District and this Division.

## IV.
## SERVICE

5. Defendant ServiceNow, Inc. is a California corporation doing business in the State of Texas. Defendant may be served through its registered agent in Texas, Cogency Global, Inc., at 1601 Elm Street, Suite 4360, Dallas, Texas 75201, or wherever it may be found.

## V.
## DEFENDANT'S HOSTILE ENVIRONMENT AND ITS DISCRIMINATORY AND RETALIATORY TREATMENT OF PLAINTIFF (SUMMARY)

6. Robert Ferguson began working with ServiceNow as an Enterprise Account Executive in February 2018. In his three years of service with the Company, Ferguson had a documented track record of success—meeting or exceeding his sales quota, out-performing his younger colleagues, and achieving great results for ServiceNow. Yet, near the end of Ferguson's employment, he was subjected to a hostile environment and discrimination due to his age by his two new managers, Addie Scott ("Scott") and Tom Elder ("Elder"), leading him to file an internal complaint of age discrimination.

7. Rather than address fairly his age discrimination complaint, the Company sat idly by and watched as Scott and Elder, the two managers about whom Ferguson complained, retaliated against Ferguson by, among other things, giving his lucrative accounts to younger, less-qualified employees, subjecting him to different performance standards than his colleagues, and ultimately terminating his employment for a stated reason that was pretextual. Ferguson's position was filled by a younger individual, Milton Skaggs.

**PLAINTIFF'S ORIGINAL COMPLAINT** – Page 2
\\rdpc-dc02\Rogge\2\2763\001\SubPldgs\Drafts\Plaintiff's Original Complaint - FINAL.docx

## VI.
## FACTS RELEVANT TO PLAINTIFF'S CLAIMS

8. ServiceNow is a cloud-based software platform that helps companies manage IT systems and workflow throughout their enterprise.

9. In February 2018, Ferguson was hired by ServiceNow as an Enterprise Account Executive.

10. Toward the end of his employment with the Company, Ferguson's work was supervised by Scott, Ferguson's boss, and by Elder, the Assistant Vice President for the Central Region, to whom Scott reported. Neither Scott nor Elder were involved in hiring Ferguson.

**Ferguson at all Times was an Exemplary Employee**

11. Throughout his employment with the Company, Ferguson worked tirelessly to meet (and exceed) his sales quota, manage lucrative customer accounts, and otherwise add value to the Company. Specifically, Ferguson achieved or exceeded his quota for two out of his three years of service, which placed him on the Company's "Top 100 List of Representatives." Moreover, Ferguson was tasked with managing accounts for prominent customers such as Keurig Dr. Pepper, Inc., Alcon Laboratories Inc., and Fluor Corp., among others.

**Scott and Elder Begin Targeting and Scapegoating Ferguson**

12. On November 5, 2020, Scott, Ferguson's boss, contacted Ferguson regarding certain customer feedback and Ferguson's supposed need to "further adopt the [Company's] value based selling" method. However, Scott's "concerns" about Ferguson's performance were based on inaccurate statements and unrelated data. Further, such "concerns" were raised almost immediately after Ferguson gave Scott negative feedback on an employee survey.

13. Given the inaccuracies in Scott's email, Ferguson contacted Heidi Columbo ("Columbo") of ServiceNow's human resources department to discuss his concerns. On a call with Columbo on November 6, 2020, Ferguson disputed each of Scott's alleged "concerns" with Ferguson's performance. Ferguson also told Columbo that Scott had perpetuated a hostile and

toxic work environment and that the timing of Scott's criticism was suspiciously close to Scott's receipt of the employee survey that Ferguson completed.

14. On November 9, 2020, Ferguson and Scott met virtually to discuss her "concerns." During the call, Ferguson sent Scott multiple emails that directly contradicted the points in her November 5, 2020 email. Scott did not acknowledge them. <u>Instead, Scott criticized Ferguson as being "old school."</u> This was a regular refrain from both Scott and Elder in that throughout 2019 and 2020, both Scott and Elder repeatedly stated that <u>Ferguson and his sales methods were "too old school."</u>

15. On December 4, 2020, Ferguson was interviewed by the Company's human resources department in connection with an investigation regarding an employee complaint against Scott. During the interview, Ferguson was candid about his negative experiences working for Scott.

16. From December 2, 2020, through December 6, 2020, Scott pressured Ferguson to contact the Chief Information and Chief Human Resource Officers of Keurig Dr. Pepper to share ServiceNow's business case for human resources onboarding. However, Ferguson had recently spoken with the head of IT Procurement for Keurig Dr. Pepper who indicated that they did not care about the "value" of the service; rather, in order to close a deal, they needed some kind of special offer from ServiceNow. Yet, to appease Scott, Ferguson contacted Keurig Dr. Pepper as requested.

17. Scott's strategy backfired. On a call with Scott and Ferguson on December 8, 2020, the Chief Technology Officer for Keurig Dr. Pepper expressed frustration with ServiceNow's decision to push its agenda on them rather than provide a special offer as requested. It became clear that a deal would not go through in 2020.

18. On December 9, 2020, Scott again contacted Ferguson and accused him (falsely) of failing to make progress as outlined in her November 5, 2020 email. Scott even suggested that

Ferguson was not the right "fit for what is expected for this role in 2021." Ferguson was shocked when he received Scott's email, considering that he had consistently out-performed his younger teammates (including those who did in fact have performance issues). Further, much of Scott's email criticized Ferguson for the communications with Keurig Dr. Pepper, despite the fact that those communications were sent upon *Scott's* instruction. Ferguson soon realized that this was just one of Scott's many attempts to push Ferguson out of ServiceNow or to get him to quit. Nonetheless, Ferguson agreed to meet with Scott to hear her thoughts on how to proceed.

**Ferguson's Internal Age Discrimination Complaint Against Scott and Elder**

19. In the meantime, on December 14, 2020, Ferguson spoke with Columbo to make a formal complaint against Scott and Elder for age discrimination. Throughout 2019 and 2020, both Scott and Elder repeatedly stated that Ferguson and his sales methods were "too old school." Further, Ferguson had observed Scott treat at least two of her older direct reports so poorly that they were no longer with the Company (and Ferguson is aware of at least two more older employees who received similar treatment). As a result, Ferguson told Columbo that he was worried that Scott or Elder or both would retaliate against him for lodging a complaint.

20. On December 16, 2020, Ferguson, Scott, and Columbo met to discuss Scott's December 9, 2020 email. During this call, Ferguson pointed out the inaccuracies in Scott's email. They also discussed a potential win-win approach that would allow Ferguson to work elsewhere in the Company. Columbo reminded Scott about the Company's anti-retaliation policy, and Scott agreed that she would not hinder Ferguson from switching positions.

**Scott and Elder Begin Retaliating Almost Immediately**

21. On December 17, 2020, however, Ferguson asked Scott to formally support him for a manager position on the new financial services team. Scott never responded which clearly hindered his ability to switch positions. Though Ferguson initially heard back from the hiring vice

president for the financial services team almost immediately, he received no further communications from that team after he requested support from Scott.

22.     Throughout the rest of December 2020, Scott—with Columbo's knowledge—repeatedly added meetings to Ferguson's schedule and insisted that many tasks be completed "immediately." Ferguson's younger colleagues were not required to attend added meetings and were not subjected to such treatment and oversight.  Rather, they were allowed, unlike Ferguson, to freely use vacation time and paid time off during the holiday season.

23.     Realizing that Scott was continuing to claim there were alleged "performance concerns," Ferguson, on December 29, 2020, sent Scott and Columbo multiple emails evidencing his strong performance and success at ServiceNow. Specifically, Ferguson highlighted the following:

(a) A track record of achieving or exceeding his sales quota, including: (1) 148% of quota in 2018; (2) 100% of quota in quarter 3 of 2019; and (3) 100% of quota in 2020, including 206% and 222% in quarters 1 and 2, respectively.

(b) Receipt of a "Circle of Success Award" in August 2020, which was based on net promoter scores received from customers regarding value they had received.

(c) A recent Value Management Report, which showed "value motion" for several of Ferguson's accounts and that he was ranked third among his colleagues for use of value, thus establishing that Ferguson *did* utilize ServiceNow's value selling techniques.

(d) Clear ability and willingness to utilize modern selling techniques as evidenced by:

(i) Twitter analytics from December 2020, showing that Ferguson's tweets earned an average of 31 impressions per day and over 2,800 impressions in the preceding 91 days; and,

(ii) A report from 2020 in which Ferguson was ranked 30th in the Company for "clicks, likes, comments, and shares" for his use of social media platforms in connection with sales.

24. Despite receiving the foregoing information, neither Scott nor Columbo acknowledged or seemed to care about Ferguson's successful track record at ServiceNow.

25. On December 30, 2020, Ferguson spoke with a newer teammate, Kenneth Turnage ("Turnage"), who stated that he had recently talked to Elder, the Central Division AVP. Turnage told Elder that Ferguson had been an incredibly helpful mentor. In response, Elder told Turnage that he wanted him (Turnage) to have another representative—Brian Flaherty ("Flaherty")—as a mentor because Ferguson was "too old school." Turnage later informed Ferguson that Ferguson's account plans contained far greater detail and better data on initiatives than Flaherty's account plans.

26. On or about January 14, 2021, Ferguson learned that the manager position on the financial services team had been filled by someone younger with less experience than Ferguson. Shortly thereafter, Ferguson applied for one of the financial services representative roles. Ferguson received no response. In fact, Ferguson repeatedly did not hear back, despite being promised otherwise, from Company recruiters and hiring managers with respect to several other positions within the Company that he was pursuing and for which he was highly qualified. At that point, given Ferguson's qualifications and proven track record, Ferguson knew he had been blackballed.

27. On January 21, 2021, Scott and Elder informed Ferguson that they intended to take the Keurig Dr. Pepper account away from him. When asked why they intended to do so, Elder's sole stated reason was that "ServiceNow is moving to industry verticals." Further, when Ferguson asked how he would receive credit for his in-flight deals, Scott and Elder refused to provide any response.

28.     On January 25, 2021, Scott and Elder took away seven (7) of Ferguson's ten (10) accounts, including Keurig Dr. Pepper, resulting in a 70% turnover. They "replaced" those accounts with failing retail accounts, like JCPenney.

29.     Despite Ferguson's requests, ServiceNow did not provide a policy or guidance on how to transition customers to other representatives and how (or if) Ferguson would receive credit for his in-flight deals. However, Ferguson's review of ServiceNow's forecast system indicated that he would only receive 50% of commissions for his previous accounts, and none of his efforts would count toward his 2021 quota. Put simply, Scott and Elder took three years of Ferguson's hard work and gave almost all rewards resulting from such efforts to other, younger representatives.

30.     It became abundantly clear to Ferguson that the fears he expressed to Columbo regarding potential retaliation had come true. Indeed, Scott's impetus to retaliate against Ferguson for claiming that she was discriminating against him (and other older employees) because of age was plainly within her character as Scott had been described in surveys by other Company employees as "bullying," "abusive," "evil," "mean-spirited," self-centered," "narcissistic," "extremely calculated," "malicious," and "condescending."

31.     On February 4, 2021, Columbo asked to set up a meeting with Ferguson and Scott for the stated purpose of discussing supposed "performance issues."

**Ferguson is Terminated for a False Reason Less than Two (2) Months After his Internal Complaint and Replaced by a Younger, Less-Qualified Individual**

32.     The meeting took place via a zoom conference call on February 8, 2021, which was less than two months after he had complained that Scott and Elder had engaged in age discrimination. Ferguson was informed that Scott and Elder had decided to fire him and that he was being fired because of "performance." It was made clear that this was the only stated reason. In light of Ferguson's actual performance relative to countless younger colleagues who were not

fired, the stated reason was both preposterous and false. Ferguson later learned that he was replaced by a younger, less-qualified individual.

## VII.
## CAUSES OF ACTION

### FIRST CAUSE OF ACTION: AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

33.     Pursuant to Federal law, Ferguson pleads a cause of action against ServiceNow for age discrimination in violation of the ADEA ("ADEA"). 29 U.S.C. § 621, *et seq*. The allegations contained in all of the paragraphs of this Complaint are hereby realleged for all purposes and incorporated herein with the same force and effect as set forth verbatim herein. Ferguson further shows as follows:

34.     At all relevant times, Ferguson was a member of a protected class, as he was over 40 years of age. *See* 29 U.S.C. § 631(a).

35.     In violation of the ADEA, ServiceNow discriminated against Ferguson because of his age in connection with the terms, conditions, and privileges of employment and limited Ferguson in a manner that deprived him or tended to deprive him of employment opportunities and adversely affected his status as an employee, including without limitation, discriminatory termination, discriminatory reduction of compensation (by transferring lucrative accounts to younger employees), discriminatory denial of transfer opportunities and discriminatory actions designed to ensure no transfer opportunities would be made available to him even though he was highly qualified for each such transfer position. *See* 29 U.S.C. § 623(a)(1)-(a)(2). ServiceNow effectuated these discriminatory acts by and through Scott, Elder, and Columbo, among other employees.

36.     Despite the fact that Ferguson consistently met or exceeded his sales quota and sought to mentor new teammates, Scott and Elder repeatedly criticized Ferguson as "too old school." Further, when presented with numerous examples of Ferguson's ability and willingness

to utilize modern sales techniques, ServiceNow responded by taking Ferguson's most lucrative customer accounts and giving them to younger, less-qualified representatives. This meant that Ferguson would only receive 50% of commissions from those accounts and that other, younger representatives would reap the benefits of *three years* of Ferguson's efforts. Then, to add insult to injury, after purportedly agreeing to a "win-win approach" in which Ferguson could work elsewhere in the Company, Scott and Elder actively prevented him from obtaining other positions at ServiceNow for which he was highly qualified. ServiceNow then wrongfully terminated Ferguson under the false and pretextual guise of "performance" and relaced him with a younger, less qualified individual.

37. Ferguson has met all procedural prerequisites of bringing these age discrimination claims. Ferguson filed EEOC charges related to these violations on April 20, 2021, and has obtained a Right to Sue letter from the EEOC relating to these charges. Further, Ferguson is within all applicable statutes of limitations for bringing this action.

38. As a direct and proximate result of ServiceNow's unlawful discrimination, Ferguson has suffered and will continue to suffer damages including, but not limited to, lost wages, lost employment benefits, lost PTO, loss of earning capacity, inconvenience, and injury to Ferguson's reputation and professional standing.

39. In addition, Ferguson is entitled to recover liquidated damages in the amount of back pay to be awarded because the facts demonstrate that ServiceNow engaged in unlawful discriminatory practices with malice or reckless indifference to Ferguson's federally-protected rights. *See* 29 U.S.C. § 626(b). Accordingly, Ferguson asks that liquidated damages be awarded against ServiceNow.

40. Further, Ferguson was required to retain attorneys to prosecute this action and has agreed to pay the retained attorneys a reasonable fee. Pursuant to 29 U.S.C. §§ 216(b) and 626(b), Ferguson seeks recovery of his reasonable and necessary attorney's fees and costs.

## SECOND CAUSE OF ACTION: AGE DISCRIMINATION IN VIOLATION OF THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

41. Pursuant to Texas state law, Ferguson pleads a cause of action against ServiceNow for age discrimination in violation of the Texas Commission on Human Rights Act ("TCHRA"). TEX. LAB. CODE § 21.001, *et seq*. The allegations contained in all of the paragraphs of this Complaint are hereby realleged for all purposes and incorporated herein with the same force and effect as set forth verbatim herein. Ferguson further shows as follows:

42. At all relevant times, Ferguson was a member of a protected class, as he was 40 years of age or older. *See* TEX. LAB. CODE § 21.101.

43. At all relevant times, Ferguson was qualified for the position he held and the positions he sought to obtain.

44. In violation of the TCHRA, ServiceNow discriminated against Ferguson because of his age in connection with the terms, conditions, and privileges of employment and limited Ferguson in a manner that deprived him or tended to deprive him of employment opportunities and adversely affected his status as an employee. *See* TEX. LAB. CODE § 21.051(1)-(2). ServiceNow effectuated these discriminatory acts by and through Scott, Elder, and Columbo, among other employees.

45. Ferguson has met all procedural prerequisites of bringing these TCHRA claims. Ferguson filed a Charge of Discrimination relating to these violations on April 20, 2021 and has obtained, or will obtain, a right to sue letter from the Texas Workforce Commission ("TWC") relating to these state claims. Further, Ferguson is within all applicable statutes of limitations for bringing these state claims.

46. As a proximate result of ServiceNow's unlawful discrimination, Ferguson has suffered and will continue to suffer damages including, but not limited to, lost wages, lost employment benefits, lost PTO, loss of earning capacity, inconvenience, injury to Ferguson's reputation and professional standing, and emotional pain.

47.     In addition, Ferguson is entitled to recover compensatory and/or punitive damages from ServiceNow because the facts demonstrate that ServiceNow engaged in unlawful discriminatory practices with malice or with reckless indifference to Ferguson's state-protected rights. *See* TEX. LAB. CODE § 21.2585. Accordingly, Ferguson asks that compensatory and exemplary damages be awarded against ServiceNow.

48.     Further, Ferguson was required to retain attorneys to prosecute this action and has agreed to pay the retained attorneys a reasonable fee. Pursuant to § 21.259 of the Texas Labor Code, Ferguson seeks recovery of his reasonable and necessary attorney's fees and costs.

### THIRD CAUSE OF ACTION: RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

49.     Pursuant to Federal law, Ferguson pleads a cause of action against ServiceNow for retaliation in violation of the ADEA. 29 U.S.C. § 621, *et seq*. The allegations contained in all of the paragraphs of this Complaint are hereby realleged for all purposes and incorporated herein with the same force and effect as set forth verbatim herein. Ferguson further shows as follows:

50.     In violation of the ADEA, ServiceNow—through Scott, Elder, and Columbo (among others)—retaliated against Ferguson because he opposed and reported age discrimination in violation of the ADEA. *See* 29 U.S.C. § 623(d). Specifically, after enduring a hostile environment due to his age, after witnessing other older employees suffer at the hands of Scott and Elder, and after repeatedly being criticized as "too old school" and being held to different standards than his younger colleagues (many of whom he out-performed), Ferguson made a formal complaint to ServiceNow that Scott and Elder were engaging in age discrimination.

51.     Shortly thereafter, Scott and Elder forced Ferguson to work over the holidays when his colleagues were given time off, ripped away 7 of his 10 lucrative accounts, gave such accounts (and most of the financial reward for his efforts) to other representatives (many of them younger), and repeatedly interfered with or purposefully failed to support (or both) Ferguson's efforts to transfer to other positions in the Company for which he was highly qualified. Thereafter and less

than two (2) months after he made his formal age discrimination complaint against Scott and Elder, he was informed that Scott and Elder had decided to terminate him for "performance." This was the only stated reason and it was both false and pretextual for the reasons stated above and, most damning of all, because just five (5) weeks before he was fired for the stated reason of "performance," he had completed calendar year 2020 at 100% (99.77%). Scott and Elder then replaced Ferguson with a younger, less qualified individual.

52. Even after his termination, Scott and Elder, on information and belief, communicated with at least one and perhaps more than one prospective employer of Ferguson to prevent Ferguson from obtaining other employment. Their communications were successful, violated the Company's policies, and were in retaliation for Ferguson having previously complained about their age discrimination against him.

53. Ferguson has met all procedural prerequisites of bringing this retaliation claim. Ferguson filed a Charge of Discrimination on April 20, 2021 that identified these retaliation claims and has obtained a Right to Sue letter from the EEOC relating to these charges. Further, Ferguson is within all applicable statutes of limitations for bringing this action.

54. As a proximate result of ServiceNow's unlawful retaliation, Ferguson has suffered and will continue to suffer damages including, but not limited to, lost wages, lost employment benefits, loss of PTO, loss of earning capacity, inconvenience, and injury to Ferguson's reputation and professional standing.

55. In addition, Ferguson is entitled to recover liquidated damages in the amount of back pay to be awarded because the facts demonstrate that ServiceNow engaged in unlawful discriminatory practices with malice or reckless indifference to Ferguson's federally-protected rights. *See* 29 U.S.C. § 626(b). Accordingly, Ferguson asks that liquidated damages be awarded against ServiceNow.

56. Further, Ferguson was required to retain attorneys to prosecute this action and has agreed to pay the retained attorneys a reasonable fee. Pursuant to 29 U.S.C. §§ 216(b) and 626(b), Ferguson seeks recovery of his reasonable and necessary attorney's fees and costs.

### FOURTH CAUSE OF ACTION: RETALIATION IN VIOLATION OF THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

57. Pursuant to Texas state law, Ferguson pleads a cause of action against ServiceNow for retaliation in violation of the TCHRA. *See* TEX. LAB. CODE § 21.055. The allegations contained in all of the paragraphs of this Complaint are hereby realleged for all purposes and incorporated herein with the same force and effect as set forth verbatim herein. Ferguson further shows as follows:

58. In violation of the TCHRA, ServiceNow—through Scott, Elder, and Columbo (among others)—retaliated against Ferguson as outlined above because he reported and filed a complaint regarding age discrimination in violation of the TCHRA. *See* TEX. LAB. CODE § 21.055(3).

59. Ferguson has met all procedural prerequisites of bringing this TCHRA claim. Ferguson filed a Charge of Discrimination relating to these retaliation claims on April 20, 2021 and has obtained, or will obtain, a Right to Sue letter from the TWC relating to these claims. Further, Ferguson is within all applicable statutes of limitations for bringing these retaliation claims.

60. As a proximate result of ServiceNow's unlawful retaliation, Ferguson has suffered and will continue to suffer damages including, but not limited to, lost wages, lost employment benefits, lost PTO, loss of earning capacity, inconvenience, injury to Ferguson's reputation and professional standing, and emotional pain.

61. In addition, Ferguson is entitled to recover compensatory and/or punitive damages from ServiceNow because the facts demonstrate that ServiceNow engaged in unlawful discriminatory practices with malice or with reckless indifference to Ferguson's state-protected

rights. *See* TEX. LAB. CODE § 21.2585. Accordingly, Ferguson asks that compensatory and exemplary damages be awarded against ServiceNow.

62.     Further, Ferguson was required to retain attorneys to prosecute this action and has agreed to pay the retained attorneys a reasonable fee. Pursuant to § 21.259 of the Texas Labor Code, Ferguson seeks recovery of his reasonable and necessary attorney's fees and costs.

### FIFTH CAUSE OF ACTION: HOSTILE ENVIRONMENT IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

63.     Pursuant to Federal law, Ferguson pleads a cause of action against ServiceNow for hostile environment in violation of the ADEA. 29 U.S.C. § 621, *et seq*. The allegations contained in all of the paragraphs of this Complaint are hereby realleged for all purposes and incorporated herein with the same force and effect as set forth verbatim herein. Ferguson further shows as follows:

64.     Ferguson, while employed by ServiceNow, was continually exposed to a hostile work environment because of his age, which included being regularly subject to ridicule for being "too old school," having accounts removed from him and given to younger colleagues, and enduring baseless criticism for "performance issues" despite his impressive track record compared to his younger colleagues. Despite Ferguson's complaints, ServiceNow took no action to remedy the hostile work environment which existed. The hostile work environment persisted until Ferguson was terminated from employment on February 8, 2021.

65.     Ferguson has met all procedural prerequisites of bringing this hostile environment claim. Ferguson filed EEOC charges related to these violations on April 20, 2021 and has obtained a Right to Sue letter from the EEOC relating to these charges. Further, Ferguson is within all applicable statutes of limitations for bringing this action.

66.     As a proximate result of ServiceNow's hostile work environment, Ferguson has suffered and will continue to suffer damages including, but not limited to, lost wages, lost

employment benefits, lost PTO, loss of earning capacity, inconvenience, and injury to Ferguson's reputation and professional standing.

67. In addition, Ferguson is entitled to recover liquidated damages in the amount of back pay to be awarded because the facts demonstrate that ServiceNow engaged in unlawful discriminatory practices with malice or reckless indifference to Ferguson's federally-protected rights. *See* 29 U.S.C. § 626(b). Accordingly, Ferguson asks that liquidated damages be awarded against ServiceNow.

68. Further, Ferguson was required to retain attorneys to prosecute this action and has agreed to pay the retained attorneys a reasonable fee. Pursuant to 29 U.S.C. §§ 216(b) and 626(b), Ferguson seeks recovery of his reasonable and necessary attorney's fees and costs.

### SIXTH CAUSE OF ACTION: HOSTILE ENVIRONMENT IN VIOLATION OF THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

69. Pursuant to Ferguson pleads a cause of action against ServiceNow for hostile environment in violation of the TCHRA. *See* TEX. LAB. CODE § 21.001, *et seq*. The allegations contained in all of the paragraphs of this Complaint are hereby realleged for all purposes and incorporated herein with the same force and effect as set forth verbatim herein. Ferguson further shows as follows:

70. Ferguson, while employed by ServiceNow, was continually exposed to a hostile work environment because of his age as outlined above.

71. Ferguson has met all procedural prerequisites of bringing this TCHRA hostile environment claim. Ferguson filed a Charge of Discrimination relating to this claim on April 20, 2021 and has obtained, or will obtain, a Right to Sue letter from the TWC relating to this claim. Further, Ferguson is within all applicable statutes of limitations for bringing this claim.

72. As a proximate result of ServiceNow's hostile work environment, Ferguson has suffered and will continue to suffer damages including, but not limited to, lost wages, lost

employment benefits, lost PTO, loss of earning capacity, inconvenience, injury to Ferguson's reputation and professional standing, and emotional pain.

73. In addition, Ferguson is entitled to recover compensatory and/or punitive damages from ServiceNow because the facts demonstrate that ServiceNow permitted and sanctioned or ratified this hostile work environment with malice or with reckless indifference to Ferguson's state-protected rights. *See* TEX. LAB. CODE § 21.2585. Accordingly, Ferguson asks that compensatory and exemplary damages be awarded against ServiceNow.

74. Further, Ferguson was required to retain attorneys to prosecute this action and has agreed to pay the retained attorneys a reasonable fee. Pursuant to § 21.259 of the Texas Labor Code, Ferguson seeks recovery of his reasonable and necessary attorney's fees and costs.

## VIII.
## RESERVATION OF RIGHTS

75. Ferguson specifically reserves the right to bring additional causes of action and seek additional relief against ServiceNow and to amend this Complaint as necessary as uncovered in Ferguson's investigation and/or as further discovery is conducted in this matter. Ferguson's investigation continues.

## IX.
## JURY DEMAND

76. Demand is hereby made for this Court empanel a lawful jury to hear this case.

## X.
## DAMAGES FOR MENTAL ANGUISH

77. As a direct and proximate result of Defendant's actions or inactions and the willful and malicious nature of the wrongs committed against the Plaintiff, Plaintiff has suffered and will suffer past, present and future severe mental anguish, which he pleads to recover at trial.

## XI.
## LIQUIDATED DAMAGES

78. As a consequence of the foregoing facts showing unlawful discriminatory practices with malice or reckless indifference to Plaintiff's federally-protected rights, Plaintiff is entitled to liquidated damages as outlined in the ADEA. *See* 29 U.S.C. § 626(b).

## XII.
## PUNITIVE DAMAGES

79. As a consequence of the foregoing clear and convincing facts and the willful and malicious nature of the wrongs committed against the Plaintiff, Plaintiff is entitled to exemplary damages. *See* TEX. LAB. CODE § 21.2585.

## XIII.
## PUNITIVE DAMAGES – NO CAP

80. A plaintiff who successfully prosecutes state law claims by proving malice by clear and convincing evidence can recover exemplary damages under Section 41.003(a)(2) of the Texas Civil Practice and Remedies Code. Punitive Damages are sought for the malicious hostile environment, discrimination and retaliation practiced by Defendant in this case. Accordingly, the Texas statutory caps are inapplicable.

## XIV.
## REASONABLE ATTORNEYS' AND EXPERT FEES

81. Per the ADEA (29 U.S.C. §§ 216(b) and 626(b)) and TEX. LAB. CODE 21.259, as amended, Plaintiff seeks to recover his reasonable and necessary attorneys' fees and reasonable expert fees incurred in prosecuting each of Plaintiff's ADEA and TCHRA claims.

## XV.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendant be cited to appear and answer this Complaint. Plaintiff further requests that on final trial, the Court enter judgment for Plaintiff and against Defendant, and award Plaintiff the following relief:

a. an amount in excess of the minimum jurisdictional requirements of this Court, for compensatory damages, lost compensation and benefits to trial and following trial, mental anguish damages, liquidated damages, and punitive damages;

b. reasonable attorneys' fees and reasonable expert fees;

c. reasonable paralegal fees;

d. costs of court;

e. pre- and post-judgment interest at the highest rate allowed by law; and

f. for such other and further relief, general or special, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

_____
**R. ROGGE DUNN**
Texas State Bar No. 06249500
E-mail:  dunn@righttowork.com

**BRYAN COLLINS**
Texas State Bar No.  04604850
E-mail:  collins@roggedunngroup.com

**ANNA OLIN RICHARDSON**
State Bar No. 24102947
E-mail:  richardson@roggedunngroup.com

**ROGGE DUNN GROUP, P.C.**
500 N. Akard Street
Suite 1900
Dallas, Texas 75201-6629
Telephone: (214) 220-3888
Facsimile: (214) 220-3833

**ATTORNEYS FOR PLAINTIFF ROBERT FERGUSON**